## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**WALTER W BLESSEY, JR,**

       **Plaintiffs,**

v.                                **Case No. 3:18cv1415/MCR/CJK**

**WALTON COUNTY,**

       **Defendant.**

_____/

## ORDER

In an effort to prevent what he perceives to be a taking of his property, Plaintiff Walter W. Blessey, Jr., filed suit against Walton County, seeking a declaration that Florida's common law customary use doctrine is unconstitutional under the Fifth and Fourteenth Amendments of the United States Constitution. *See* 42 U.S.C. § 1983. The County moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6). The Court finds that the motion is due to be granted and the case be dismissed for lack of subject matter jurisdiction.

**Background**

The Complaint alleges that Blessey owns beachfront property, which includes a dry sand beach extending seaward to the mean high-water line along the Gulf of

Mexico in Walton County, Florida. Blessey challenges "the County's deprivation of rights under color of state law," stating that "the County's consistent assertion of customary use" over Blessey's and others' beachfront property creates a cloud on his title and instills in tourists and the public a "false and illegal basis by which they believe they can freely utilize private property." ECF No. 1, at 5, ¶ 20. The Complaint alleges few facts and many conclusions of law. In reviewing a complaint, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), but because the claims at issue here demand an understanding of Florida's property law, the Court finds that a brief review of the law will be helpful.

"Generally speaking, state law defines property rights," and in Florida, the mean high-water line marks the boundary between privately owned beach property and state-owned land held in trust for the public. *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 707–08 (2010). Florida courts have recognized a "customary use right," which originates in English common law, under which the public maintains a right to use the dry sand beach adjacent to the mean high-water line without interference by the property owner, on proof that the public's recreational use of a particular area has been "ancient, reasonable, without

Case No. 3:18cv1415/MCR/CJK

interruption and free from dispute." *City of Daytona Beach v. Tona-Rama, Inc.*, 294 So. 2d 73, 78 (Fla. 1974); *see also Trepanier v. Cty. of Volusia*, 965 So. 2d 276, 288 (Fla. 5th DCA 2007). Consistent with this case law and effectively codifying that common law, the Florida Legislature recently enacted a statutory procedure that must be followed before a governmental entity may seek to regulate a parcel of property based on the customary use doctrine. *See* Fla. Stat. § 163.035 (HB 631 effective July 1, 2018). That process requires (1) public notice and a hearing at which the governing board must "adopt a formal notice of intent to affirm the existence of a recreational customary use on private property," detailing the property at issue and the source of proof it intends to offer, and (2) a lawsuit by the governmental entity in the circuit court of the county in which the property lies to obtain a judicial determination and declaration that the customary use right exists. *See id.*

Turning to the instant Complaint, the general allegations acknowledge that the Florida Supreme Court has recognized the doctrine of customary use and that the County in the past has asserted customary use over Blessey's property and all sandy beaches in Walton County, through an ordinance that took effect in April 2017. The Complaint also recognizes as a factual matter that the Florida Legislature's recent enactment of Fla. Stat. § 163.035 effectively invalidated Walton County's

Case No. 3:18cv1415/MCR/CJK

customary use ordinance because it was not based on a judicial declaration, as now required by the statute. *See* Fla. Stat. § 163.035(2) (prohibiting a governmental entity from adopting or keeping in effect an ordinance based on customary use without first obtaining the requisite judicial declaration), and (4) (limiting the applicability of the statute, stating it does not apply to any ordinance or rule adopted and in effect on or before January 1, 2016). It is alleged that the County presently intends to initiate the new statutory process in an effort to obtain a judicial declaration of customary use for the entire shoreline of Walton County, including Blessey's property. Blessey claims that the County's "assertion of customary use" amounts to state action that has created a cloud on his title; "instill[ed] in the public and tourists a false and illegal basis by which they believe they can freely utilize private property;" and "caused great uncertainty regarding the enforcement of trespass laws by the Walton County Sheriff's Office and landowners themselves." ECF No. 1 at 5-6 ¶¶ 20-21. Blessey seeks a declaration that the common law doctrine of customary use is unconstitutional because it takes property for public use with no just compensation (Count I) and is void for vagueness under the Due Process Clause (Count II).

**Standard of Review**

Subject matter jurisdiction can be challenged by a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, either factually or facially. Walton County has made a facial challenge. In such a case, the Court construes the allegations of the complaint as true and considers only whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction.[1] *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Similar to a facial jurisdictional challenge, a Rule 12(b)(6) motion to dismiss for failure to state a claim is reviewed by construing all allegations in the light most favorable to the plaintiff. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). The Court accepts all well-pleaded facts alleged as true for purposes of a Rule 12(b)(6) motion and considers whether the complaint contains factual matter sufficient "to state a claim to relief that is plausible on its face." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Twombly*, 550 U.S. at 570). Plausibility requires "enough [factual assertions] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[1] If subject matter jurisdiction is challenged factually, jurisdiction is considered irrespective of the pleadings; that is, matters outside the pleadings may be considered. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

Case No. 3:18cv1415/MCR/CJK

## Discussion

"Article III of the United States Constitution limits the jurisdiction of the federal courts to actual cases and controversies." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 (11th Cir. 1991) (citing U.S. Const. art. III, § 2). The cases or controversies limitation must be "strictly observe[d]." *See National Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005). Standing is an integral part of the case or controversy requirement. *Cone Corp.*, 921 F.2d at 1203; *see also Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues" (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Three elements comprise "the irreducible constitutional minimum" of Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must show: (1) an injury in fact to a "legally protected interest" that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical;" (2) a causal connection showing the injury is "fairly traceable to the challenged action;" and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal quotations and alterations omitted); *see also Lewis v. Governor of Ala.*, 896 F.3d 1282, 1289 (11th Cir. 2018). A plaintiff's failure to show any one of these three

Case No. 3:18cv1415/MCR/CJK

elements requires dismissal. *See Koziara v. City of Casselberry*, 392 F.3d 1302, 1304-05 (11th Cir. 2004).

The law is well settled that "a plaintiff seeking only injunctive or declaratory relief must prove not only an injury, but also "a 'real and immediate threat' of future injury in order to satisfy the 'injury in fact' requirement." *Koziara,* 392 F.3d at 1305 (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 (11th Cir. 2003)). Absent "a distinct and palpable injury" caused by the defendant, "the exercise of federal jurisdiction would be gratuitous and thus inconsistent with the Art. III limitation." *Gladstone Realtors*, 441 U.S. at 99, 100 (internal quotations omitted); *see also Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 72 (1978). Thus, each element of standing is "an indispensable part of the plaintiff's case," *Lujan*, 504 U.S. at 561, and this is true regardless of whether the claim presents a facial or an as-applied constitutional challenge. *See KH Outdoor, L.L.C. v. Clay Cty., Fla*., 482 F.3d 1299, 1305 (11th Cir. 2007) (stating that both facial overbreadth and as applied challenges require the plaintiff "to prove constitutional standing") (citing *Bischoff v. Osceola County, Fla*., 222 F.3d 874 (11th Cir. 2000) (analyzing the three prongs of standing before considering plaintiff's facial constitutional challenge)); *see also Harrell v. The Fla. Bar*, 608 F.3d 1241, 1253

(11th Cir. 2010) (requiring constitutional standing for a due process void-for-vagueness challenge).

The County maintains that dismissal for lack of subject matter jurisdiction is required because the Complaint establishes on its face that there is no actual case or controversy in this matter or threat of injury, where the claim is founded merely on allegations that the County *intends* to follow the new state procedure regarding customary use. The County argues that this suit is "no more than a poorly disguised and premature effort to end-run Florida's new recreational customary use statute." ECF No. 12, at 13. In response, Blessey asks the Court to take judicial notice that the County has now given notice of a public hearing to be held on September 8, 2018, which initiates the first step of the statutory process. According to the notice, the purpose of the hearing is for the County to adopt a formal statement of intent to affirm the existence of recreational customary use on his property, as well as others' in Walton County. Blessey insists that the County's "assertion" of its intent to initiate the statutory procedure demonstrates a live controversy and injury.

Under Rule 201(b) of the Federal Rules of Evidence, at any stage of a proceeding, courts can take "judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," including public

documents. *See Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1278 (11th Cir. 1999). The Court finds it is appropriate to take judicial notice of the hearing notice, ECF No. 15-1, at 3. Nonetheless, the Court agrees with the County that Blessey's allegations, which are essentially nothing more than a challenge to the common law doctrine itself, are insufficient to demonstrate a live case or controversy as well as a concrete or imminent injury for purposes of Article III standing.

As noted above, the County no longer has an ordinance in place regulating customary use on Blessey's property, and Florida law now statutorily requires a judicial declaration as a prerequisite to any regulation based on customary use. *See* Fla. Stat. § 163.035. The County's mere "assertion" that the common law doctrine applies by announcing an intent to hold a public hearing and initiate the statutory process has not deprived Blessey of a constitutional protection or injured a property right. Blessey offers no legal support for his contention that this has created a cloud on his title. Nor is the public hearing a license to allow trespassing on Blessey's property, and in fact, Blessey does not argue that the County continues to encourage trespassing or is failing to enforce trespass laws. Moreover, the County has not completed the statutory process, and Blessey has not challenged the statute as unconstitutional.

Blessey alleges uncertainty as an injury, but this uncertainty merely shows that his allegation of injury remains hypothetical. Several hoops, with room for conjecture at each step, must be cleared before the doctrine of customary use can be applied to Blessey's property: the County must adopt a formal statement of intent that includes Blessey's property, file suit in state court, present convincing evidence to the state court of long-standing and undisputed recreational use on the property, and the state court must make several particularized findings in the County's favor. *See* Fla. Stat. § 163.035(3). The statute provides no presumption in favor of customary use and requires a *de novo* judicial declaration that the doctrine applies.[2] Indeed, at this point, it is equally plausible that the state court will rule in Blessey's favor if a lawsuit is filed.[3]

_____

[2] Any such declaration can be appealed. Also, although neither the common law doctrine nor § 163.035 expressly provides for compensation where a declaration of customary use is obtained, Florida law does provide remedies, such as inverse condemnation, which can be raised as a cause of action or a counterclaim to obtain just compensation when a property right is taken. And, Florida law provides added protection to real property rights through a statutory cause of action by which a landowner can obtain compensation when government action unfairly affects real property and burdens an existing use of property or a vested right, without amounting to a taking under the Constitution. *See* Fla. Stat. § 70.01. Blessey assumes without discussion that these state law remedies would not be available to property owners impacted by a declaration of customary use, but this is not clear. In a recent case, although customary use was not discussed, Florida's inverse condemnation remedy was used successfully to obtain compensation where a municipality had encouraged public use of a privately owned beach. *See Chmielewski v. City of St. Pete Beach*, 890 F.3d 942 (11th Cir. 2018). As noted, at this time, there is no allegation that the County is currently encouraging trespass on Blessey's property.

[3] At best, there is an allegation of "possible future injury" if the state court ultimately declares that customary use exists as to Blessey's property, but this is insufficient for Article III

Therefore, Blessey's argument that the County is putting the cart before the horse by attempting to use the state procedure to obtain a judicial declaration of customary use without first being required to litigate the constitutionality of the underlying common law principle rings hollow.[4]  Because the doctrine cannot apply absent a judicial declaration, it is Blessey who places the cart in the wrong place.[5]  Addressing a challenge to the common law doctrine with no state action and no concrete or immediate threat of injury would require this Court to make a constitutional determination based on hypothetical facts.  Essentially, Blessey asks

---

standing because, as the Supreme Court has noted, "[i]t is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case."  *Whitmore v. Arkansas*, 495 U.S. 149, 159-60 (1990).

[4] Blessey also argues that it is axiomatic that federal courts have the power to review state laws alleged to be unconstitutional and grant declaratory relief.  *See Duke Power Co. v. Carolina Envtl. Study*, 438 U.S. 59, 71 & n.15 (1978) (noting a declaratory judgment suit "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action "before potentially uncompensable damages are sustained").  The Court agrees, but, this maxim does not eliminate the constitutional requirement of an immediate threat of injury that is not speculative or conjectural.

[5] Blessey also draws an analogy between this case and a criminal prosecution, in which a defendant seeking to suppress evidence on a Fourth Amendment violation is allowed to do so before trial.  He contends that, like a criminal defendant, he should not be required to go wait for the state law process to conclude before he can challenge the constitutionality of the doctrine. The Court rejects this analogy.  A criminal defendant, unlike the landowner here, is already in criminal jeopardy and has been subjected to a search or seizure when bringing a Fourth Amendment challenge.  The County's notice of a public hearing in this instance is far removed from a criminal indictment or an unconstitutional seizure; the public hearing places no burden on Blessey's property rights.  Moreover, notice to a property owner informing him of a right to participate in any state court lawsuit is an opportunity, not an injury, and nothing precludes constitutional issues from being raised in state court.

Case No.  3:18cv1415/MCR/CJK

the Court to address his constitutional challenge to the common law doctrine in the abstract, which it may not do. *See, e.g., Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018) (courts "are not in the business of issuing advisory opinions . . . that merely opine on what the law would be upon a hypothetical state of facts") (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)); *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1038 (11th Cir. 2015) ("In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's [arguments].") (alteration in original, quoting *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006)). The Court concludes that standing, and therefore subject matter jurisdiction, is lacking. Thus, there is no need to address the parties' remaining arguments.

Accordingly:

1. Defendant's Motion to Dismiss, ECF No. 12, is **GRANTED**. The case is **DISMISSED without prejudice**.

2. Plaintiff's request for oral argument is **DENIED**.

3.    The Clerk is directed to close the file.

**DONE AND ORDERED** this 7th day of September 2018.


*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**